[Crim. No. 13148. Fourth Dist., Div. One. Mar. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v. DAVID LEE WILLIAMS, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Kenyon C. Keller, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Steven V. Adler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WIENER, J.**—An eight-count information charged David Lee Williams with (1) the robbery of Paul Burkhart (Pen. Code § 211),[1] (2) the robbery of Laura Rule (§ 211), (3) assault with intent to commit murder of Lloyd Waugh (§ 217), (4) assault with a deadly weapon on Peace Officer Lloyd Waugh (§ 245, subd. (b)), (5) taking of an automobile (Veh. Code § 10851), (6) possession of a sawed-off shotgun (§ 12020, subd. (a)), (7) assault with a deadly weapon on Laura Rule (§ 245, subd. (a)), and (8) assault with a deadly weapon on Peace Officer Teofilo Weston (§ 245, subd. (b)). All counts except count 5 alleged firearm use (§ 12022.5); a great bodily injury enhancement against Waugh was also alleged (§ 12022.7). After the denial of his section 1538.5 motion, Williams entered into a plea bargain pleading guilty to the first two counts of robbery, admitting the GBI enhancement and use of a firearm in each robbery. The remaining counts were dismissed. Williams' sentence to prison for eleven and two-thirds years was com-

---

[1]All statutory references are to the Penal Code unless otherwise specified.

puted as follows: count 1—five years (upper term for the robbery), two years for fire arm use plus three years for GBI to be served consecutively with count 2—one year for the robbery plus eight months for the firearm use. In his appeal from the judgment, Williams claims sentencing error under *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23] because the court erred in imposing the enhancement for firearm use when he actually used the gun on only one occasion in a continuous transaction.

The following factual summary is taken from the transcript of the preliminary hearing.

On September 14, 1980, Williams held a gun on Paul Burkhart, a clerk in The Gap, a clothing store, and told him to open the cash register and give him the money. Burkhart gave Williams about $80 from the register. At Williams' direction, Burkhart locked the front doors of the store and went with Williams to the back of the store, where Laura Rule was working in the office. When they reached the back office, Burkhart told Rule they were being robbed. Rule and Burkhart opened the safe and gave Williams about $700. Williams rummaged through the desk and Rule's purse, but took nothing more. While they were in the back office, Williams threatened Rule and Burkhart saying, "Don't look at my face. You've seen my face too much. I will blow your head off. Don't look at my face. I will blow you away." He then left the office. About 30 seconds later, gunshots were heard.

San Diego Police Officer Lloyd Waugh had gone to The Gap in response to a radio call about a silent alarm. At the front door, Williams grabbed him. While they were grappling, Williams' gun discharged, striking Waugh in the thigh. When Police Officer Weston came to the front door, he saw Waugh lying on the floor and Williams standing over him holding a gun. Weston shot Williams and took him into custody.

Before the enactment of the determinate sentencing law (DSL) (Stats. 1976, ch. 1139, § 273), multiple firearm use under section 12022.5 was prohibited where all the charged offenses were incident to one objective, and where they effectively comprised an indivisible transaction. (*In re Culbreth, supra*, 17 Cal.3d 330, 333.) Our Supreme Court explained: "The legislative purpose of section 12022.5 has been described as deterrence, i.e., to deter the use of firearms on subsequent occasions. Thus it has been held that where there are consecutive robberies in sev-

eral communities over a period of several hours, a defendant may not bootstrap himself into avoidance of additional penalties by claiming that the series of divisible acts, each of which had been committed with a separate identifiable intent and objective, composed an indivisible transaction. [Citations.] *But if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once and not in accordance with the number of victims.* [Citation.]" (*Id.*, at pp. 333-334, italics supplied.)

Whether *Culbreth* survived DSL has been debated. *People* v. *Edwards* (1981) 117 Cal.App.3d 436 [172 Cal.Rptr. 652], after noting "those cases which have held that *Culbreth* does not apply to DSL have either distinguished it on the facts or were ordered depublished" (*id.*, at p. 447), has interpreted DSL as not interring *Culbreth*. (*Id.*, at p. 448; see also *People* v. *Rogers* (1981) 124 Cal.App.3d 1071, 1081-1082 [177 Cal.Rptr. 747].) Although we believe *Edwards* is sound precedent, it is unnecessary for us to join that debate on the facts of this case.

Unlike defendant Edwards who was convicted by a jury, Williams preferred to avoid a factual record in either a court or jury trial and negotiated a guilty plea. His written change of plea form reflects his approval of a possible sentence of eleven years and eight months, which the court imposed, including eight months for using a firearm during the robbery of Laura Rule. Although the contents of the written form he signed are insufficient to support a waiver of his right to argue *Culbreth* error, Williams' statements on that form acknowledge his understanding that the underlying facts of the offenses to which he pleaded guilty could reasonably be interpreted as supporting a factual finding that he had separate and identifiable intents and objectives in the commission of each of the robberies. If the court were to make that factual finding, the single ocassion rule under *Culbreth* would be inapplicable. (See *People* v. *Wischemann* (1979) 94 Cal.App.3d 162, 174 [156 Cal. Rptr. 386]; *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 840 [155 Cal.Rptr. 780].)

■ At sentencing, the court, in rejecting Williams' *Culbreth* argument, expressly found "the two robberies were, in fact, two separate occasions for the imposition of the 12022.5 enhancement." That factual finding is supported not only by the plea bargain, but by the record which permits a reasonable factual inference that only after Williams

completed his rather unsuccessful robbery of Burkhart which had yielded $80 did he decide to look elsewhere for additional funds. After the first robbery, he then forced Burkhart to lock the door in order to locate Rule in the back room to obtain the additional $700. Because the court found there were two separate intents and objectives in the two robberies, it acted properly in imposing an additional eight months for the second firearm use enhancement under section 12022.5.

*Disposition*

Judgment affirmed.

Staniforth, Acting P. J., concurred.

**LEVITT, J.***—I concur in the result. However, I do not believe *People v. Edwards* (1981) 117 Cal.App.3d 436 [172 Cal.Rptr. 652], is sound precedent.

I would affirm the judgment on the basis that the single enhancement limitation imposed by *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal. Rptr. 719, 551 P.2d 23], has been fatally undermined by the determinate sentence law, since sentencing in general, and Penal Code section 12022.5[1] in particular, was changed by it. Under former section 12022.5 an initial indeterminate sentence of five years for firearm use was imposed and doubled for a second use and tripled for a third use. Under the determinate sentence law there is uniform punishment for all firearm use with an additional consecutive term of two years. It is inconsistent, if not illogical, to deny multiple firearm use enhancements for multiple offenses when punishment of a defendant who commits a violent crime on multiple victims may properly be increased by imposing consecutive sentences for multiple offenses.

The court in *People v. Edwards, supra,* reasoned the Legislature, when it last amended section 12022.5, did not address itself to the *Culbreth* issue and the court refused to rely on the silence of the Legislature. I believe the legislative intent in enacting the determinate sentencing law is not silent and is clear. The new purpose is punishment. Enhancements are required to be applied for each consecutive offense;

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

only striking of punishment for enhancements and not enhancements themselves is permitted; the seriousness of firearm use has been recognized by special provisions (see, e.g., § 1203.06, subd. (a)(1)). Accordingly, I do not concur that *People* v. *Edwards* is sound precedent.